UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| WINSTON CORNELL BURT, ) | |
| ) | |
| Petitioner, ) | Case No. 1:02-cv-623 |
| ) | |
| v. ) | Honorable Robert Holmes Bell |
| ) | |
| MARY BERGHUIS, ) | |
| ) | **MEMORANDUM OPINION** |
| Respondent. ) | |
| ) | |

This matter is before the court on the objections of petitioner to the Report and Recommendation of the magistrate judge. Petitioner, represented by retained counsel, objects to the proposed findings and conclusions of the magistrate judge made in a 55-page Report and Recommendation (R&R) reviewing petitioner's five grounds for habeas corpus relief from his 1999 conviction for first-degree murder. MICH. COMP. LAWS § 750.316. This court reviews *de novo* timely objections to a magistrate judge's report and recommendation on dispositive matters. 28 U.S.C. § 636(b)(1)(B); FED. R. CIV. P. 72(b).

The Calhoun County Circuit Court sentenced petitioner on August 20, 1999, after a jury found petitioner guilty of first-degree murder and of possession of a firearm during the commission of a felony. These charges arose from a drive-by shooting that occurred in Battle Creek on March 12, 1997, and which resulted in the death of Quincy Webb. Petitioner admitted that he was a passenger in a car that drove by the crime scene and that he had discharged a .380 caliber pistol during the affray. Petitioner argued that he acted in self-defense and further asserted that he

had not shot the bullet that killed Quincy Webb. The R&R sets forth the complicated procedural history of this case in both the state and federal courts. As petitioner does not object to this aspect of the R&R, those findings are adopted herein without further discussion.

Petitioner's counsel does object to the magistrate judge's findings on each of petitioner's five claims for relief. For the reasons below, the court finds the objections unpersuasive and, in certain particulars, misleading. The court will discuss each claim in turn.

### 1.

Petitioner's first claim is that the evidence was insufficient to support a finding that petitioner fired the bullet that killed Quincy Webb. The fatal bullet was a 9 mm. Petitioner admitted to shooting a single gun, a .380 pistol, although several witnesses testified that petitioner was firing two guns at the time of the killing. The magistrate judge appropriately applied the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), namely, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, viewing the evidence in a light most favorable to the prosecution. Furthermore, since the Michigan Court of Appeals directly reviewed this constitutional claim, this court's review of the issue must be conducted under the AEDPA standard, which asks whether the state court's decision resulted in an unreasonable application of *Jackson v. Virginia*. *See Hartman v. Bagley*, 492 F.3d 347, 369 (6th Cir. 2007); *Riley v. Berghuis*, 481 F.3d 315, 320-21 (6th Cir. 2007). Under this standard, all inferences and credibility determinations must be drawn in favor of the prosecution, and federal review is "limited to whether the evidence was so overwhelmingly in favor of the petitioner that it compelled a verdict in his or her favor." *Thompson v. Bock*, 215 F. App'x 431, 436 (6th Cir. 2007).

In determining that the evidence was sufficient to support the jury's verdict, the magistrate judge conducted a painstaking review of the trial testimony, which this court will not repeat. In summary, the magistrate judge noted that the victim was standing in front of 11 Bernardo Place, which is near the southwest corner of Hubbard Street (a north/south street) and Bernardo Place (an east/west street). At the time of the killing, the victim was standing with a number of gang members near this corner, and the car in which petitioner was a passenger was traveling northbound on Hubbard Street and then turned left onto Bernardo. The state Court of Appeals found that at least three weapons were discharged at the time of the killing: a .45 pistol, a .380 pistol, and a 9 mm pistol. (Op. at 2). The fatal bullet was a 9 mm cartridge, and petitioner admitted only to shooting a single gun, a .380 pistol. Numerous witnesses, however, testified that petitioner discharged two weapons, one in each hand. Testimony also showed that "weapons were fired at the car in which [petitioner] was a passenger." (Op. at 2). The magistrate judge, scrutinizing the forensic evidence concerning the placement of shell cartridges, concluded that the 9 mm and .380 shell casings were found in the area of 185 Hubbard Street, across the street from the place where the decedent and gang members were standing, whereas the .45 mm shell casings were found in the area of 11 Bernardo Place, where the gang members were standing. In conclusion, the magistrate judge found as follows:

> A reasonable trier of fact viewing this evidence could easily conclude beyond a reasonable doubt that the fatal 9 mm bullet had been fired by petitioner over the roof of the car as it proceeded down Bernardo Place. The jury was not required to ignore this forensic evidence, nor was it required to accept petitioner's testimony, contradicted by numerous eye witnesses, that he fired only one gun.

(R&R at 26, docket # 67).

In response, petitioner's counsel mounts a concerted attack against the magistrate judge's reading of the record, essentially asserting that the magistrate judge made unwarranted findings and distorted the evidence. Counsel goes so far as to suggest that, contrary to the R&R's statements, the victim was not standing on the southwest corner of the intersection. After an initial review of petitioner's objections, the court directed that respondent file a copy of certain trial exhibits, which would more clearly demonstrate the scene of the crime and the placement of the shell cartridges. Respondent has now done so. (*See* docket # 73).[1] Examination of the exhibits indeed confirms the magistrate judge's conclusion that the killing took place in front of 11 Bernardo Place, near the southwest corner of the intersection of Hubbard Street and Bernardo Place. The 9 mm cartridges (identified in the exhibits by numbers 16, 17, 18, 19, 20, 22, 23, 24, and 25) all were found near the driveway of 185 Hubbard Street, across the street from the place where Quincy Webb and the gang members were standing. (*See* Detective Howe Testimony, TT III at 164-66). Cartridges numbered 2, 21, 26, 27 and 37 were .380 caliber and were likewise found across the street from the victim, except for cartridge 2, which was found at the end of the driveway of 11 Bernardo Place where it connects to the street. The .45 cartridges were denominated in the exhibits by low numbers (5, 6, 8, 9, 10, 11, and 12) were found in or near the driveway of 11 Bernardo Place, where the victim and his companions were standing. (TT III, 167-68). A reasonable jury faced with this evidence would be well justified in concluding that petitioner fired a 9 mm handgun, as well as a .380 pistol,

---

[1] The exhibits, as submitted by respondent, do not bear the exhibit numbers from trial. By reference to the trial testimony, however, it is possible to identify most of them. Furthermore, the principal utility of the exhibits is to show the placement of shell cartridges, by reference to numbered cones placed by officers at the scene of the crime. By referring to the trial testimony, especially that of Detective Howe (TT III, 152-192) and cross-referencing that testimony to the exhibits, it is possible to discern the placement of the spent cartridges.

over the hood of the car as it proceeded westward down Bernardo Place, thus discharging cartridges on the north side of the street, while the gang members returned fire with weapons other than a 9 mm pistol from the driveway.

The trial transcript alone provides ample support for a jury finding of guilt. This conclusion is only bolstered by the trial exhibits now on file. Petitioner's attempts to distort this record, or to claim gaps in the evidence where none exists, is unavailing. The court rejects petitioner's first habeas corpus claim.

**2.**

Petitioner also challenges the sufficiency of the evidence to support a finding that the killing was deliberate and premeditated, necessary elements of first-degree murder under Michigan law. Again, this court must accord deference to the determination of the Michigan Court of Appeals on this issue, which directly reviewed the question. The state Court of Appeals, applying the appropriate federal standard, noted that the car in which petitioner was a passenger had driven by the group at least two times, flashing gang signs. After the second pass, the car made a U-turn and drove back towards the people on the street corner. Petitioner sat on the edge of the window, firing over the roof or hood of the car. Faced with this evidence, petitioner's present counsel asserts to this court that "there was no evidence the shooting by Petitioner was anything other than a sudden response to being attacked." (Objections at 5, docket # 68). This is an exercise in wishful thinking. The jury was not required to accept petitioner's version of events, and it obviously rejected his rather unbelievable claim of self-defense. Counsel attempts to reargue the facts to reach a conclusion contrary to that reached by the jury. This is impermissible on habeas corpus review. Upon

independent review of the record, the court finds the evidence sufficient to support the jury's finding that the murder was deliberate and premeditated.

**3.**

Petitioner's third claim arises from a post-conviction petition filed in 2004, five years after the trial. It relies upon two affidavits, submitted to the trial court in support of a motion for new trial, which petitioner's counsel argues demonstrate the knowing use of perjured testimony as well as a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The magistrate judge, after reviewing the affidavits, concluded that they were insufficient to create a reasonable probability that the result of petitioner's trial would have been different. He further concluded that the affidavits did not demonstrate the prosecution's knowing use of perjured testimony. In response, petitioner's counsel advocates in favor of an evidentiary hearing, which is clearly not warranted in the circumstances. A habeas corpus proceeding is not the proper venue in which to raise rhetorical questions about the knowledge of investigating officers a decade earlier.

After *de novo* review of petitioner's claim of the knowing use of perjured testimony and his related *Brady* claim, the court finds them to be without merit, for the reasons amply stated by the magistrate judge.

**4.**

Petitioner's next claim arises from testimony elicited from witness Demetrius Cain by defense counsel to the effect that a week and a half before the shooting, petitioner had fired a shot at a car in which Cain and another man were riding. Petitioner challenges this as both ineffective assistance of counsel and a violation of Rule 404(b) of the Michigan Rules of Evidence.

The evidentiary claim is easily dispatched. The Supreme Court has clearly held that state-law evidentiary errors are generally not grounds for habeas corpus relief. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991). In the present case, the allegedly offending evidence was presented by defense counsel, not the prosecution. Yet, petitioner's counsel doggedly persists in the idea that the presentation of so-called "bad acts" evidence by defense counsel himself violates the Constitution. This claim is frivolous.

Alternatively, petitioner asserts that his counsel's elicitation of this evidence constituted the ineffective assistance of counsel. Applying the familiar *Strickland* standard, *Strickland v. Washington*, 466 U.S. 668 (1984), the state Court of Appeals rejected this contention, finding that the question represented reasonable trial strategy "to bring out evidence suggesting a motive for a gang ambush of defendant and the co-defendant." (Op. at 3). The appellate court found that the evidence supported defendant's claim of self-defense as well as his counsel's theory that the victim's death resulted from friendly fire. (*Id.*). This court concurs with the magistrate judge that (1) the finding of the state appellate court does not represent an unreasonable application of *Strickland*; (2) the record amply supports the appellate court's conclusion concerning the obvious tactical motivation for defense counsel's question; and (3) petitioner is barred from seeking an evidentiary hearing by the provisions of 28 U.S.C. § 2254(e)(2).

**5.**

Petitioner next claims that his trial counsel was constitutionally ineffective for failure to impeach witness Arenza Hubbard, the co-defendant, with a prior inconsistent statement that Hubbard made under oath at his plea hearing concerning whether or not he knew the gang members

standing on the corner. The magistrate judge reviewed this issue under the deferential AEDPA standard, as the Michigan Court of Appeals had determined that counsel's decision not to attack Hubbard's credibility was reasonable trial strategy. (Op. at 4). The objections make a cursory challenge to the reasoning of the state Court of Appeals as well as that of the magistrate judge. Upon *de novo* review, the court concludes that defense counsel's decision not to challenge Hubbard's credibility was more than reasonable, as his testimony was overwhelmingly helpful to petitioner. The R&R (pp. 47-49) amply demonstrates this fact. The court agrees with the magistrate judge that the hindsight criticism now lodged by petitioner's habeas counsel (that defense counsel was ineffective for failing to impeach a helpful witness) is incoherent and does not establish any basis for a finding that trial counsel was ineffective.

**6.**

Petitioner's final claim charges prosecutorial misconduct arising from isolated comments made in opening and closing argument. The state Court of Appeals found that petitioner had failed to preserve this issue for appellate review by making a timely objection at trial and therefore reviewed only for a miscarriage of justice. (Op. at 4-5). On this basis, the magistrate judge correctly concluded that petitioner was guilty of a procedural default, barring habeas corpus review in the absence of cause and prejudice. This court concurs that the issue is procedurally defaulted, that petitioner failed to show good cause for the default, and that petitioner has not shown actual prejudice resulting therefrom. The court further concurs that the isolated statements of the prosecutor were neither improper nor flagrant. *See Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006), *cert. denied*, 127 S. Ct. 1376 (2007). Even in the absence of a procedural default, petitioner

cannot show on this record that these statements so infected the trial with unfairness as to make the resulting conviction a denial of due process.

### **Conclusion**

Upon *de novo* review of petitioner's objections and the record in this matter, the court concludes that petitioner has failed to show grounds for habeas corpus relief. The report and recommendation of the magistrate judge, as supplemented by this memorandum opinion, will therefore be adopted as the opinion of the court, petitioner's objections will be overruled, and habeas corpus relief will be denied.

Date:   September 24, 2007            /s/ Robert Holmes Bell
                                      ROBERT HOLMES BELL
                                      CHIEF UNITED STATES DISTRICT JUDGE